607 A.2d 745

**Bruce B. BURKHOLDER, t/a Burkholder Associates**

**v.**

**William M. CHERRY and Deborah L. Cherry, husband and wife**

**v.**

**Esther BURKHOLDER.**

**Appeal of William M. CHERRY and Deborah L. Cherry.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1991.

Filed March 27, 1992.

Reargument Denied June 5, 1992.

Kenneth A. Wise, Harrisburg, for appellants.

Robert L. McQuaide, Gettysburg, for appellees.

Before WIEAND, MONTEMURO and KELLY, JJ.

WIEAND, Judge:

In this action to recover moneys due under a residential construction contract, the jury returned a verdict in favor of the contractor, Bruce B. Burkholder, and against the homeowners, William and Deborah Cherry, for eighteen thousand ($18,000) dollars. The trial court then molded the verdict to add interest in the sum of five thousand, one hundred fifty-four and 14/100 ($5,154.14) dollars. Post-trial motions were denied, and judgment was entered on the molded verdict. On appeal, the homeowners allege several

errors, the most significant of which pertains to the trial court's award of interest.

The contract price alleged in the contractor's complaint was sixty-four thousand, one hundred eighty-five ($64,185) dollars. The contractor also claimed an additional three thousand, five hundred eighty-nine and 19/100 ($3,589.19) dollars for extras allegedly ordered by the Cherrys. Of the total amount due, the contractor gave credit for the sum of thirty-five thousand, three hundred one and 75/100 ($35,-301.75) dollars already paid by the homeowners, leaving an alleged contract balance of thirty-two thousand, four hundred seventy-two and 44/100 ($32,472.44) dollars. By subsequent amendment to the complaint, the contractor added an alternate count in quantum meruit, in which he asserted a claim for benefits bestowed upon the Cherrys in the amount of nineteen thousand, six hundred eighteen and 95/100 ($19,618.95) dollars. Alleging work that was both incomplete and defective, the Cherrys filed a counterclaim for damages. They also joined Esther Burkholder, the contractor's wife, on the theory that she was a partner with or agent for her husband. The jury, as we have observed, returned a verdict in the amount of eighteen thousand ($18,000) dollars in favor of the contractor.

In *Kessler v. Old Guard Mutual Insurance Company*, 391 Pa.Super. 175, 570 A.2d 569 (1990), the Superior Court made the following observations regarding the payment of interest.

As a general rule, the right to pre-judgment interest on money owing upon contract is a legal right. *Fernandez v. Levin*, 519 Pa. 375, 379, 548 A.2d 1191, 1193 (1988). If the breach of contract consists of a failure to pay a definite sum in money, interest is recoverable from the time of performance on the amount due. Restatement (Second) of Contracts § 354(1). Where recoverable, pre-judgment interest may be added to a jury's verdict by the trial court. See: *Commonwealth to the Use of Walters Tire Service, Inc. v. National Union Fire Insurance*

*Co.,* 434 Pa. 235, 242, 252 A.2d 593, 596 (1969); *Verner v. Shaffer,* 347 Pa.Super. 206, 211, 500 A.2d 479, 480 (1985). *Id.* 391 Pa.Super. at 181–182, 570 A.2d at 573.

In support of their contention that the contractor was not entitled to recover interest, the Cherrys make two arguments. First, they argue that interest is not recoverable on a claim for quantum meruit, and in this case it is impossible to determine whether the recovery allowed by the jury was for quantum meruit or based on the price established by the contract. Secondly, they argue, the jury may have allowed some or all of their counterclaim and, if so, the amount of the claim was unascertainable. These are novel and interesting arguments. Ultimately, however, we conclude that they are without merit.

The justification for an award of interest, as stated in *Frank B. Bozzo, Inc. v. Electric Weld Division,* 345 Pa.Super. 423, 498 A.2d 895 (1985), is that

because the defendant knew or at least could have learned the amount of his debt, he should have tendered that amount to the plaintiff. Since he did not, and by failing to do so caused the delay of litigation, he has deprived the plaintiff of the use of that amount from the date of the breach to the date of the satisfaction of the judgment. Or to state it conversely, the defendant has for that period had the use of money now known to have been the plaintiff's. *See generally,* 5 Corbin on Contracts, §§ 1047, 1048 (1964), Restatement Second Contracts § 354, Comment d.

*Id.,* 345 Pa.Superior Ct. at 430, 498 A.2d at 898.

The law is stated in the Restatement (Second) of Contracts, at section 354, as follows:

§ 354. Interest as Damages

(1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions to which the party in breach is entitled.

(2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

The rule is explained in comment (c) as follows:

c. **Where amount due is sufficiently definite.** Under the rule stated in Subsection (1), a party is not chargeable with interest on a sum unless its amount is fixed by the contract or he could have determined its amount with reasonable certainty so that he could have made a proper tender. Unless otherwise agreed, interest is always recoverable for the non-payment of money once payment has become due and there has been a breach. This rule applies to debts due for money lent, goods sold or services performed, including installments due on a construction contract. The fact that the breach has spared some expense that is uncertain in amount does not prevent the recovery of interest. The sum due is sufficiently definite if it is ascertainable from the terms of the contract, as where the contract fixes a price per unit of performance, even though the number of units performed must be proved and is subject to dispute. The same is true, even if the contract does not of itself create a money debt, if it fixes a money equivalent of the performance. It is also true, even if the contract does not fix a money equivalent of the performance, if such an equivalent can be determined from established market prices. The fact that the extent of the performance rendered and the existence of the market price must be proved by evidence extrinsic to the contract does not prevent the application of these rules.

Appellant has failed to cite any authority, and our own research has revealed none, that would prevent prejudgment interest from being awarded where a recovery is had for the value of work done or services rendered on a quantum meruit basis. The basis for the contractor's recovery in the instant case was the construction contract which he had with the owners. Whether the damages were based

on the terms of the contract or on quantum meruit, it is clear that the owners have had the use of the contractor's money since the date on which it was due. The amount owed, moreover, was sufficiently ascertainable so that a tender could have been made. We hold, therefore, that where, as here, the claim is for work done and services rendered, the claimant is entitled to recover pre-judgment interest.

The Restatement rule is also clear that interest is to be calculated "on the amount due less all deductions to which the party in breach is entitled." Thus, the amount of the claim is not rendered unascertainable, for purposes of determining whether pre-judgment interest is recoverable, merely because the breaching party has asserted a counterclaim. Otherwise, a breaching party could always defeat a claim for pre-judgment interest by filing a counterclaim. This is not the law. Although the precise issue has not previously been before the appellate courts of this Commonwealth, most courts which have considered the issue have held that the ascertainable amount of a claim is not rendered unascertainable by a breaching party's counterclaim. See: *Davis v. Carpenter,* 155 Ga.App. 301, 270 S.E.2d 810, 812 (1980), *rev'd on other grounds,* 247 Ga. 156, 274 S.E.2d 567 (1981) ("[T]he fact that the jury returned a verdict ... in an amount less than the figure prayed for ... in no way necessarily converted the claim for an otherwise liquidated amount into a claim for an uncertain and, therefore, unliquidated amount."); *Homes & Son Construction, Inc. v. Bolo Corporation,* 22 Ariz.App. 303, 526 P.2d 1258, 1261–1262 (1974) ("It appears to be the well-recognized rule that if the amount due under a contract is ascertainable, but is reduced by the existence of an unliquidated set-off or counterclaim, attributable to the contract, [pre-judgment] interest is properly allowable on the balance found due from the due date."); *Herbert & Brooner Construction Co. v. Golden,* 499 S.W.2d 541, 553 (Mo.App.1973) ("[W]here ... the plaintiff's demand is liquidated, the interposition of an unliquidated counterclaim, set-off or recoupment does not convert

the liquidated demand into an unliquidated one or preclude the plaintiff's recovery of prejudgment interest ... or prevent the recovery of interest on the balance of the demand found due from the time it became due."); *Mitchell v. Flandro*, 95 Idaho 228, 506 P.2d 455, 462 (1972) (the fact that the defendant alleged that the plaintiff had not properly performed under the contract "does not militate against [plaintiff's] claim for interest."); *Beck v. Lawler*, 422 S.W.2d 816, 819–820 (Tex.1967) (plaintiff entitled to recover pre-judgment interest on amount awarded at trial subject to the defendant's set-off or counterclaims; otherwise, pre-judgment interest never recoverable in case where amount sought to be recovered was placed in doubt by a counterclaim).

In this case, the trial court did not err when it calculated pre-judgment interest on the amount found due and payable by the jury and molded the jury's verdict to include such interest.

▬ Appellants' remaining assignments of error are readily determined. The trial court did not err when it dismissed without submitting to the jury appellants' complaint against Esther Burkholder, the additional defendant. Although appellants rely upon *J.R. Christ Construction Co. v. Olevsky*, 426 Pa. 343, 232 A.2d 196 (1967), their reliance is misplaced. There, the court did hold that the status of husband and wife gave rise to a "presumption in the law that either party has the power to act for both without specific authorization so long as the benefits of such action are contemplated to insure both spouses." However, the Court was there concerned with authority to contract for improvements to real estate owned by husband and wife as tenants by the entireties. That decision, therefore, has no application here, where it was appellants' contention that Esther Burkholder had been a business partner of her husband.

In the instant case, the only evidence offered by the Cherrys was that Burkholder had used an entireties bank account for business purposes and that his wife had been

seen at the job site. This was insufficient to establish a husband and wife business partnership. A business partnership does not, without more, arise merely by reason of marital status. Moreover and in any event, the jury's verdict has rendered moot any claim which appellants might have had against Mrs. Burkholder.

The trial court also did not err when it ruled that, as a matter of law, the Cherrys had failed to produce evidence that the contractor had violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law of November 24, 1976, P.L. 1166, No. 260, 73 P.S. § 201–1 et seq. This law is to be liberally construed to effectuate its intent, but we must remember that its intent is to prevent fraud. *Chatham Racquet Club v. Comm. of Penna.*, 127 Pa.Commw. 209, 219, 561 A.2d 354, 359 (1989), *alloc. denied*, 527 Pa. 604, 589 A.2d 694 (1991). Here, there was no evidence of fraud. Even William Cherry conceded that Burkholder had made no representations pertaining to any special skills as a builder, and it is not enough to establish a violation of the statute that Burkholder failed to fulfill the Cherrys' expectations regarding the quality of his work. Moreover, appellants were unable to prove a loss. The jury determined that the dwelling had been constructed in a good and workmanlike manner and that Burkholder was entitled to be paid for his. work. Under these circumstances, the Cherrys did not sustain any loss that was compensable under the provisions of the Unfair Trade Practices and Consumer Protection Law.

Burkholder testified at trial that the Cherrys had made requests for certain additions and changes to the standard home. The defendants cross-examined him about a document which appeared to be a change order. This change order contained what purported to be the following: "Approved: W.M. Cherry." When Burkholder was asked about it on cross-examination, he said that it was a carbon copy on which Cherry's signature had not been clear and that, therefore, Cherry had clarified the same by retracing his signature over the carbon imprint. When Cherry testi-

fied on direct examination, he denied ever seeing the document prior to the commencement of Burkholder's suit.

Late that afternoon, Cherry sought to call out of order Irene Setlack, a handwriting analyst, on the representation that she would not be available on the following day. When she was called, an offer of proof was made that she would testify that the Cherry signature was "a tracing with a slow hand." She conceded, however, that she could not say, and had no opinion, as to who had done the tracing. When the trial court pressed counsel for further information, counsel could offer nothing further. The trial court, therefore, held Setlack's opinion inadmissible. Later, counsel again offered to call the witness to show, not a tracing, but a copy of Cherry's signature. The trial court again refused to allow the testimony.

A close examination of the document discloses that the word "Approved" is a carbon imprint. There is also a carbon imprint of the signature purporting to be that of W.M. Cherry. Over this carbon imprint, however, is a tracing or copying of the signature in ink. This is readily apparent to the naked eye; and the witness could testify to nothing more. She could not say and was not offered to prove that the carbon imprint underlying the traced or copied overlay was anything but a precise imprint of Cherry's authentic signature. Under these circumstances, the witness had nothing to impart that was not already both evident and conceded by the plaintiff. The trial court, therefore, did not abuse its discretion when it disallowed the expert's testimony.

For all of these reasons, it is abundantly clear that the judgment in favor of appellee must be, as it is,

AFFIRMED.