## Land O'Lakes Inc. v. Zelenkofske, Axelrod & Co. Ltd.

C.P. of Bucks County, no. 96-06390-24-1.

*Manny D. Pokotilow, James J. Kozuch* and *Michael J. Berkowitz,* for plaintiff.

*Walter H. Flamm Jr.* and *Brian W. Waerig,* for defendant.

HECKLER, *J.,* October 29, 1999—A jury trial which commenced on February 16, 1999, was conducted in this matter. On February 19, 1999, the jury rendered a verdict in favor of plaintiff Land O'Lakes in the amount of $404,000. Thereafter, plaintiff Land O'Lakes filed a motion for post-trial relief that the verdict be molded to include prejudgment interest. On June 28, 1999, this court

issued an order denying plaintiff's motion to mold the verdict to include prejudgment interest. Plaintiff appeals from that order. In accordance with Pennsylvania Rule of Appellate Procedure 1925(a), we file this opinion.

## BACKGROUND

In the summer of 1994, Land O'Lakes Inc., known as Atlantic Dairy Cooperative prior to a merger, assessed the effectiveness of their existing computer system, the IBM AS 400. A.D.C., as the plaintiff was known at the time of the events which give rise to this matter, was the employer of several hundred people. The primary function of the Atlantic Dairy Cooperative was to market and distribute the milk of its member farmers. This required A.D.C. to test milk to ensure compliance with government regulations and to operate in a fashion which met the pickup and delivery needs of its members and customers. A.D.C.'s IBM computer system was used for sharing information within the company and for processing billing statements. A.D.C. concluded that, because the lease on the existing computer was coming to an end and because their present outdated system was not adequate to their needs, the capacity of their information system should be expanded.

Unable to have its own management information systems division implement a new system, A.D.C. decided to seek outside assistance. Plaintiff invited Zelenkofske, Axelrod and Co. Ltd. to survey its existing system. Z.A. is an accounting firm. In addition to providing accounting services to their clients, Z.A. also offers management consulting services.

After completing the survey, defendant Z.A. presented plaintiff with a proposal that offered two alternative solu-

tions, characterized respectively as short-term or long-term in nature. The short-term solution was to make improvements to the existing system and the long-term solution was to restructure and redesign A.D.C.'s entire computer system.

A.D.C. decided that the long-term proposal would best fit their company's needs. After approval from the company's finance committee, A.D.C. informed Z.A. that they would be brought in to implement the long-term solution. Z.A. estimated the time for completion to be 18 to 22 months. Based upon Z.A.'s proposal, the total cost for the project was to be $880,000. The cost breakdown was $700,000 to Z.A. for consulting services and $180,000 for hardware and software.

The system to be implemented was described as a client/server system. Such a system involves a network of inter-connected personal computers. This system was termed a turnkey computer system, meaning that the system would be designed from beginning to end, enabling A.D.C. simply to begin to use the system once it had been assembled and installed by Z.A.

A.D.C. was to assist with the implementation of the new system by providing Z.A. with information concerning the dairy industry to enable Z.A. to develop the project in accordance with A.D.C.'s needs. In addition to designing and implementing the system, Z.A. was to recommend which hardware and commercially available software A.D.C. would purchase for use in creating the new platform. In a presentation made while seeking this account, Z.A. represented to A.D.C. that a substantive benefit would be derived from the project every month or two throughout the life of the project.

Z.A. began work on the project in August of 1994. Evan Fineman, the chief financial officer of A.D.C., was assigned to oversee this project. Paul Miller was the original project manager for Z.A. In May of 1995, Z.A. replaced Paul Miller with one Steven Schifter. In the late summer of 1995, James Fraher replaced Mr. Fineman. Mr. Fraher was the chief operations officer of A.D.C.

Mr. Fraher assumed the responsibility of overseeing the Z.A. project in August of 1995. After familiarizing himself with the project, he ascertained that no written agreement existed between A.D.C. and Z.A. for the implementation of the computer system. On September 12, 1995, Mr. Fraher met with members of the Z.A. staff and spoke with Mr. Schifter. At that time he advised Schifter that A.D.C. would not be making any further payments on the project until a written agreement concerning the performance of the project was formulated and executed. Up to this point, Z.A. had billed and A.D.C. had paid approximately $440,000 for work on the project.

Mr. Schifter drafted a written agreement and presented it to Mr. Fraher on September 26, 1995. The agreement proposed that A.D.C. pay Z.A. an amount in excess of the original budgeted amount for the completion of the project. The draft pushed the total price up to $950,000 and extended the project three months beyond the original 18 month deadline. In addition, the written agreement provided that the rights to market and sell the completed program were to be retained by Z.A. The proposed written agreement was not accepted by Mr. Fraher.

On October 19, 1995, a formal meeting was held. Present at the meeting were: Andrew Zelenkofske, managing partner of Z.A.; Mr. Schifter; Robert Dever, chief executive officer of A.D.C.; and Mr. Fraher. At that meet-

ing, Mr. Fraher and Mr. Dever informed Z.A. that a third party was going to be brought in to conduct a "fresh look" at the project. The purpose of this was to determine what had been done and what remained to be done on the project. Further, the A.D.C. representatives informed Z.A. that subsequent to the "fresh look," the balance of the project would be put out for bid. Z.A.'s cooperation in the "fresh look" was requested and it was explained to Z.A. that they would have the opportunity to bid on the balance of the project at the end of the "fresh look." Mr. Zelenkofske agreed that Z.A. would cooperate in the "fresh look." The company hired to do this "fresh look"— also referred to as a scope study—was C.B. Technologies in Malvern, PA. Their assignment was to examine the documentation of the project, to understand what the scope of the project was and based upon existing documentation to determine how much of the project had actually been completed.

Z.A. requested that A.D.C. either pay or assure payment of invoices then outstanding as a precondition to Z.A.'s participation in the "fresh look." Mr. Fraher explained to Mr. Schifter that the outstanding invoices would not be paid until the "fresh look" was completed. At that point Mr. Fraher again asked for Z.A.'s cooperation in the "fresh look." Z.A.'s representative found this request to be unacceptable. Shortly thereafter, Z.A. left the project and A.D.C. entirely, taking with them a box of documents. At that time A.D.C.'s outstanding invoices with Z.A. amounted to $216,950.64.

Z.A. filed suit against A.D.C. on August 12, 1996 for breach of contract, quantum meruit and unjust enrichment.[1]

---

1. Defendant Z.A.'s suit was originally filed in Montgomery County. The suit was transferred to Bucks County so that these matters could be heard together.

Thereafter, A.D.C. filed suit against Z.A. on August 27, 1996. A.D.C. asserted claims for breach of contract, unjust enrichment and breach of express and implied warranties. After the completion of discovery and rulings on various motions, these consolidated matters went to trial on February 16, 1999. After a four-day trial, the jury rendered a verdict in favor of A.D.C. in the amount of $404,000.

Pursuant to Pennsylvania Rule of Civil Procedure 227.1 governing post-trial relief, A.D.C. filed a motion to mold the verdict to include prejudgment interest. On June 28, 1999, this court entered an order denying plaintiff A.D.C.'s motion to mold the verdict to include prejudgment interest. Plaintiff appeals from said order.

## ISSUES ON APPEAL

In their statement of matters complained of on appeal, plaintiff asserts that this court erred in denying plaintiff's motion to mold the verdict to include prejudgment interest. For the reasons stated below, this court denied plaintiff's motion to mold the verdict to include prejudgment interest.

## DISCUSSION

Generally, there is a legal right to prejudgment interest on money owing upon a contract. See *Verner v. Shaffer,* 347 Pa. Super. 206, 500 A.2d 479 (1985); *Burkholder v. Cherry,* 414 Pa. Super. 432, 607 A.2d 745 (1992). The justification for an award of interest is that "because the defendant knew or at least could have learned the amount of his debt, he should have tendered that amount to the plaintiff. Since he did not, and by failing to do so caused the delay of litigation, he has deprived the plaintiff of

the use of that amount from the date of the breach to the date of the satisfaction of the judgment." *Burkholder v. Cherry,* 414 Pa. Super. 432, 436, 607 A.2d 745, 747 (1992) (citing *Frank B. Bozzo Inc. v. Electric Weld Division,* 345 Pa. Super. 423, 430, 498 A.2d 895, 898 (1985)).

Traditionally, when determining a party's right to interest, the Pennsylvania courts have followed the Restatement (Second) of Contracts §354. See *e.g., Burkholder v. Cherry, supra; Verner v. Shaffer, supra; Somerset Community Hospital v. Allen B. Mitchell and Associates Inc.,* 454 Pa. Super. 188, 685 A.2d 141 (1996). Section 354 of the Restatement (Second) of Contracts is as follows:

"*Section 354. Interest as damages*

"(1) If the breach consists of a failure to pay a definite sum in money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time of performance on the amount due less all the deductions to which the party in breach is entitled.

"(2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due." Restatement (Second) of Contracts §354(1)(2).

Comment (c) explains the rule as follows:

"*(c) Where the amount due is sufficiently definite.*

"Under the rule stated in subsection (1), a party is not chargeable with interest on a sum unless its amount is fixed by contract or he could have determined its amount with reasonable certainty so that he could have made a proper tender. Unless otherwise agreed, interest is always recoverable for the nonpayment of money once payment has become due and there has been a breach. . . . The sum due is sufficiently definite if it is ascertainable from

the terms of the contract, as where the contract fixes a price per unit of performance even though the number of units performed must be proved and is subject to dispute. The same is true, even if the contract does not of itself create a money debt if it fixes a money equivalent of the performance. It is also true, even if the contract does not fix a money equivalent of the performance if such equivalent can be determined from established market prices. The fact that the extent of the performance rendered and the existence of the market price must be proved by evidence extrinsic to the contract does not prevent the application of these rules." Restatement (Second) of Contracts §354, comment (c).

In the instant case, plaintiff contends that the damages awarded were readily ascertainable and therefore plaintiff is entitled to mold the verdict to include prejudgment interest. This court disagrees.

The present matter was a contractual dispute where both parties claim that the opposing party breached the contract. The terms of the contract underlying this dispute are unclear. There was no written agreement. The only terms established beyond dispute at trial were that Z.A. was to have completed a turnkey computer system within 18 months at a total cost to A.D.C. of $880,000. The contract did not establish separately valued and defined stages of completion whereby defendant Z.A. would complete a certain percentage of the project which the parties agreed would have a certain value. There was no ascertainable monetary value for Z.A.'s failure to render performance on the project because the terms of the contract and the circumstances surrounding it lacked clarity. The undisputed evidence established that Z.A. had

done at least some work of value for A.D.C. Defendant Z.A. contended that they had performed satisfactorily and would have completed the project but for A.D.C.'s refusal to pay. Accordingly, Z.A. contended that they were not the breaching party.

The damage claims of both parties reinforce the nature of the dispute. A.D.C. claimed the right to recover all or most of the $440,000 which it had paid to Z.A. Z.A. claimed more than $216,000 in unpaid invoices which A.D.C. had refused to pay.

The scope study performed by C.B. Technologies does not provide a definite monetary equivalent for the work done by Z.A. or the work left by Z.A. to be done. The study assigned a total value of $16,000 to the work Z.A. had commenced but not completed. The study, however, did not examine the work that Z.A. had completed; nor did it include such work in a calculation of value.

Further, the jury's determination that A.D.C. was entitled to a damages award in the amount of $404,000 is irrelevant for the purposes of prejudgment interest. The jury's methodology for calculating A.D.C.'s damage award does not establish an ascertainable monetary sum in the nature of a debt of which the defendant had notice.

In an action for breach of contract involving the failure to pay a definite sum of money, the amount due is likely to be sufficiently definite so as to establish plaintiff's legal right to prejudgment interest on the money owed. However, where, as in the instant case, the breach involves the failure of a contracting party to render performance and there exists no mechanism in the contract by which, apart from a jury's verdict, to assign a definite value to the defendant's failure to render satisfactory

performance, there would seem to be no ascertainable monetary value of which the defendant could be said to have had notice until trial was completed. Without such ascertainable monetary value, plaintiff does not have a legal right to prejudgment interest.

For the foregoing reasons, plaintiff's motion to mold the verdict to include prejudgment interest was denied.