J-S01041-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KEM RESOURCES, LP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DEER PARK LUMBER, INC., | : | |
| RYVAMAT, INC., RYAN A. ANDREWS; | : | |
| MATTHEW R. ANDREWS; VANESSA | : | No. 619 MDA 2021 |
| K. DIMEOLO; RONALD A. ANDREWS; | : | |
| CIRTUS ENERGY CORPORATION | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: RYVAMAT, INC. | : | |

Appeal from the Judgment Entered April 29, 2021
In the Court of Common Pleas of Wyoming County Civil Division at
No(s): 2014-CV-857

| | | |
|---|---|---|
| KEM RESOURCES, LP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DEER PARK LUMBER, INC., | : | |
| RYVAMAT, INC., RYAN A. ANDREWS; | : | |
| MATTHEW R. ANDREWS; VANESSA | : | No. 645 MDA 2021 |
| K. DIMEOLO; RONALD A. ANDREWS; | : | |
| CIRTUS ENERGY CORPORATION | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: KEM RESOURCES, LP | : | |

Appeal from the Judgment Entered April 29, 2021
In the Court of Common Pleas of Wyoming County Civil Division at
No(s): 2014-CV-857

BEFORE: BOWES, J., NICHOLS, J., and COLINS, J.[*]

_____

[*] Retired Senior Judge assigned to the Superior Court.

MEMORANDUM BY COLINS, J.:                          **FILED JULY 13, 2022**

These matters are consolidated cross-appeals filed by Ryvamat, Inc. (Ryvamat) and KEM Resources, LP (KEM) from a judgment entered by the Court of Common Pleas of the 44th Judicial District Wyoming County Branch (trial court) in an action for an accounting of a paid-up oil and gas lease brought by co-owners of the leased property. For the reasons set forth below, we affirm the trial court's judgment, except for its award of prejudgment interest for the period before this action was filed, and vacate and remand that portion of the prejudgment interest award.

In March 2008, Ryvamat purchased land in Wyoming County from Deer Park Lumber, Inc. (Deer Park), a corporation owned by the same family that owns Ryvamat. Included in the land that Ryvamat purchased were 4,619 acres that had been owned by Morris S. Kemmerer. Kemmerer sold these 4,619 acres (the Kemmerer properties) in the 1950s pursuant to deeds that reserved a one-half interest in the oil, gas, and mineral rights underlying the land. In 2007, Deer Park, which had acquired the Kemmerer properties in 1987, filed a quiet title action with respect to the Kemmerer properties and obtained a default judgment that it was the sole owner of the oil, gas, and minerals located on the Kemmerer properties.

In July 2008, Ryvamat entered into a paid-up oil and gas lease (the Lease) with Unit Petroleum Company (Unit Petroleum). Under the Lease,

Ryvamat received a payment on July 21, 2008 of $12,644,512 for lease of the oil and gas rights on the Kemmerer properties.

In August 2008, Endless Mountains Hunting Club, Limited (Endless Mountains) filed a petition to strike Deer Park's quiet title judgment, claiming that it was the owner of the one-half interest in the oil, gas, and mineral rights that Kemmerer had reserved with respect to the Kemmerer properties. In January 2009, the estates of Kemmerer and his son Morris Kemmerer, Jr. (the Kemmerer estates) filed a petition to strike the quiet title judgment claiming that the Kemmerer estates, not Endless Mountains, were the owner of the same one-half interest in the oil, gas, and mineral rights that Kemmerer had reserved. In September 2014, the trial court granted the motions to strike the quiet title judgment. Trial Court Opinion, 7/19/21, at 3. On May 15, 2015, the trial court granted summary judgment against Deer Park in the quiet title action and dismissed Deer Park's quiet title complaint with prejudice. *Id.*

In September 2009, Unit Petroleum assigned the Lease to Citrus Energy Corporation (Citrus). In August 2010, Citrus filed an action in federal court (the Citrus action) against Ryvamat and other parties seeking recission of the Lease with respect to the Kemmerer properties and damages as a result of the competing claims concerning the Kemmerer properties. Citrus Complaint. In November 2010, a settlement of the Citrus action was entered into under which Ryvamat paid Citrus $3,200,000 (the Citrus settlement). N.T. Trial at 45; Citrus Settlement Agreement.

On July 18, 2014, Endless Mountains and the Kemmerer estates filed a complaint in the instant action against Ryvamat, Deer Park, Ryvamat's principals, and an attorney who represented Ryvamat in connection with the Lease. In this complaint, Endless Mountains and the Kemmerer estates asserted, *inter alia*, a claim for an accounting seeking one-half of the payment that Ryvamat received from Unit Petroleum with respect to the Kemmerer properties based on their status as co-owners of those properties as tenants-in-common with Ryvamat and a claim for unjust enrichment with respect to that payment. Complaint ¶¶34-47, 59-60. In January 2015, Endless Mountains and the Kemmerer estates settled their dispute, conveyed to KEM their rights to the one-half interest in the oil, gas, and mineral rights that Kemmerer had reserved with respect to the Kemmerer properties, and assigned their claims in this action to KEM. 1/8/15 Deed; 1/12/15 Assignment of Rights. KEM was substituted as the plaintiff in this action in February 2015 and, on September 28, 2015, filed an amended complaint naming Ryvamat, Deer Park, Ryvamat's principals, and Citrus as defendants. In this amended complaint, KEM asserted a claim for an accounting against Ryvamat, Deer Park, and Ryvamat's principals seeking one-half of the payment that Ryvamat received under the Lease with respect to the Kemmerer properties based on its status as a tenant-in-common and a claim for a constructive trust against Ryvamat, Deer Park, and Ryvamat's principals based on the assertion that these defendants were unjustly enriched. Second Amended Complaint ¶¶43-

65. With respect to Citrus, KEM asserted a claim for unjust enrichment with respect to the $3.2 million that Ryvamat paid to Citrus in the Citrus settlement. *Id.* ¶¶66-76.

On December 3, 2018, KEM filed a motion for partial summary judgment against Ryvamat and Citrus seeking, *inter alia*, judgment against Ryvamat in the amount of $6,322,256 plus interest from July 21, 2008 on its accounting and constructive trust claims and seeking dismissal of Ryvamat's affirmative defenses. On January 28, 2019, Ryvamat, Deer Park, and Ryvamat's principals filed a motion for summary judgment asserting that all of KEM's claims against them were barred by the statute of limitations. Deer Park and Ryvamat's principals also filed a motion for summary judgment on the ground that KEM had no cause of action against them and Citrus filed a motion for summary judgment asserting that KEM's claims against it were barred by the statute of limitations.

On October 24, 2019, the trial court ruled on the summary judgment motions. In this decision, the trial court rejected Ryvamat's argument that the statute of limitations barred KEM's accounting claim against it and granted KEM's motion for partial summary judgment with respect to its right to an accounting from Ryvamat and Ryvamat's laches defense and other affirmative defenses to liability, but concluded that there were disputed issues of fact with respect to the amount that Ryvamat owed. Trial Court Order and Opinion, 10/24/19, at 6-11, 22-26. The trial court also granted summary judgment in

favor of Deer Park and Ryvamat's principals on the ground that KEM had no cause of action against them and granted summary judgment in favor of Citrus on the ground that KEM's claims against Citrus were barred by the statute of limitations. *Id.* at 13-22.

On November 19, 2019, the trial court ordered Ryvamat to file an accounting with respect to the Lease payment that it received with respect to the Kemmerer properties. On January 13, 2020, Ryvamat filed an accounting in which it deducted the entire $3.2 Citrus settlement payment, various commissions and legal fees incurred in connection with the Lease, accounting fees that Ryvamat allegedly incurred with respect to the Lease, the legal fees incurred by Ryvamat in the Citrus action, one-half the cost of an easement acquired by Ryvamat, and income taxes allegedly paid on the Lease payment. KEM filed objections to this accounting in which it asserted that Ryvamat was not entitled to any reduction for the Citrus settlement and objected to most of Ryvamat's other deductions. On June 22 and 23, 2020, the trial court held a non-jury trial on Ryvamat's deductions from KEM's one-half share of the $12,644,512 Lease payment.

On December 11, 2020, the trial court issued a decision on the amount that Ryvamat owed KEM. The trial court found that Ryvamat was entitled to credit for one-half of the Citrus settlement, $1.6 million. Trial Court Decision, 12/11/20, at 2-3. The trial court also found that Ryvamat was entitled to credits of $206,122 for KEM's share of the commissions and legal fees incurred

in connection with the Lease and $2,650 for one-half of the legal fees incurred by Ryvamat in the Citrus action. *Id.* at 3-4. The trial court rejected Ryvamat's claims for income taxes, accounting fees, and acquisition of an easement. *Id.* at 4-5. The trial court also held that KEM was entitled to prejudgment interest from July 21, 2008 at the rate of six percent on the $4,513,484 that Ryvamat owed KEM. *Id.* at 6-7.

Both parties filed post-trial motions, which the trial court denied on April 22, 2021. On April 22, 2021, the trial court also entered judgment in favor of KEM and against Ryvamat "in the sum of $4,513,484.00, together with simple interest thereon at the rate of six (6) percent per annum from July 21, 2008 to the date of entry of this judgment ($3,455,968.10), for a total judgment of $ 7,969,452.10." Trial Court Judgment. Ryvamat timely appealed from this judgment and KEM timely filed a cross-appeal.

In its appeal, Ryvamat raises the following issues: 1) that it was entitled to judgment in its favor on the grounds that KEM's claims against it were barred by the statute of limitations; 2) that the trial court erred in granting summary judgment against its laches defense; 3) that the trial court erred in denying a reduction for income taxes; 4) that the trial court erred in allowing only a $1.6 million reduction for the Citrus settlement; and 5) that the trial court erred in awarding prejudgment interest from July 21, 2008 and awarding such interest at the rate of six percent. Ryvamat Brief at 6-7. KEM in its cross-appeal contends that the trial court erred in granting Ryvamat a $1.6

million reduction for the Citrus settlement and, alternatively, that it erred in denying KEM interest on that $1.6 million for the period from July 21, 2008 until the date that Ryvamat paid the Citrus settlement. KEM Brief at 62-63. We address KEM's cross-appeal issues in our discussion of Ryvamat's issues concerning the Citrus settlement and the trial court's award of prejudgment interest.

Ryvamat's first issue turns on whether KEM's accounting claim is subject to a four-year or a six-year statute of limitations. This is an issue of law as to which our review is *de novo* and plenary. ***Commonwealth v. Corban Corp.***, 957 A.2d 274, 276 (Pa. 2008). KEM's assignors commenced this action on July 18, 2014, more than four years after Ryvamat received the payment under the Lease on July 21, 2008. In addition, the trial court found that KEM's assignors were aware of the Lease by November 2008, Trial Court Order and Opinion, 10/24/19, at 16, more than four years before their 2014 suit against Ryvamat. The filing of this action on July 18, 2014, however, was within six years of the date that Ryvamat received payment under the Lease and therefore was timely if KEM's accounting action is subject to a six-year limitation.

Pennsylvania's four-year statute of limitations applies to actions based on oral and written contracts, other actions based upon writings, and actions based "upon a contract implied in law." 42 Pa.C.S. § 5525(a). Pennsylvania's six-year statute of limitations applies to "[a]ny civil action or proceeding which

is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation." 42 Pa.C.S. § 5527(b).

Accounting is a form of relief incident to a cause of action, not a cause of action itself. *Slomowitz v. Kessler*, 268 A.3d 1081, 1106 (Pa. Super. 2021); *Buczek v. First National Bank of Mifflintown*, 531 A.2d 1122, 1123 (Pa. Super. 1987). Ryvamat argues the six-year catch-all limitation does not apply because the only cause of action that KEM could have would be a claim for fraud or breach of fiduciary duty, subject to a two-year limitation period, 42 Pa.C.S. § 5524(7), or a claim for unjust enrichment that it contends is subject to the four-year statute of limitation. We do not agree.

Ryvamat is correct that common law unjust enrichment actions are subject to the four-year statute of limitations for contracts implied in law. 42 Pa.C.S. § 5525(a)(4); *Sevast v. Kakouras*, 915 A.2d 1147, 1153 (Pa. 2007); *Cole v. Lawrence*, 701 A.2d 987, 989 (Pa. Super. 1997). However, KEM's cause of action here is not a common law unjust enrichment claim. Rather, KEM's claim is a statutory cause of action to enforce its rights as a co-tenant-in-common of real property. 68 P.S. § 101 (providing for any "tenants in common, not in possession, to sue for and recover from such tenants in possession his or their proportionate part of the rental value of said real estate"); *Sheridan v. Coughlin*, 42 A.2d 618, 620 (Pa. 1945). In *Sheridan*, our Supreme Court held that such a co-tenant of real property who is not in possession has a cause of action under 68 P.S. § 101 to obtain an accounting

of its share of income received by the other tenant-in-common from the jointly owned property. 42 A.2d at 620.

Ryvamat contends that **Sheridan** is no longer good law because the statute on which it was based has been repealed. To the extent that Ryvamat is arguing that the statute of limitations applied in **Sheridan** has been repealed, Ryvamat is correct, and it is our current statutes of limitations that govern whether KEM's action is time-barred. The statute on which **Sheridan** based the cause of action at issue here, 68 P.S. § 101, has not been repealed, however, and remains in effect. **Sheridan**'s holding that a co-tenant-in-common, such as KEM, has a statutory cause of action for an accounting therefore remains good law.

The four-year statute of limitations, 42 Pa.C.S. § 5525, does not refer to actions seeking an accounting or actions concerning the rights of co-owners of real property. In addition, no other provision of Pennsylvania's statutes of limitations provides a limitation period for seeking an accounting or for actions between co-owners of real property for income received from the property. Because it is not a cause of action covered by any other limitation period, the statute of limitations applicable to a cause of action between co-tenants-in-common under 68 P.S. § 101 is the six-year limitation of 42 Pa.C.S. § 5527(b). **See Bednar v. Bednar**, 688 A.2d 1200, 1204 (Pa. Super. 1997); **Quarello v. Clinger**, No. 544 WDA 2020, at 10 (Pa. Super. March 10, 2021) (unpublished memorandum). The trial court therefore correctly concluded

that this action, commenced less than six years after the Lease payment was received by Ryvamat, was not barred by the statute of limitations.

In its second issue, Ryvamat challenges the trial court's grant of summary judgment on its laches defense. Our review of a grant of summary judgment is *de novo* and plenary. ***Pyeritz v. Commonwealth***, 32 A.3d 687, 692 (Pa. 2011).

Ryvamat asserts that there was sufficient evidence before the trial court to support a laches defense. This argument fails. To bar an action based on laches, the defendant must show both a delay arising from the plaintiff's failure to exercise due diligence and that it suffered prejudice as a result of that delay. ***Morgan v. Millstone Resources Ltd.***, 267 A.3d 1235, 1245 (Pa. Super. 2021); ***Fulton v. Fulton***, 106 A.3d 127, 131 (Pa. Super. 2014).

The claims of prejudice that Ryvamat has asserted are the Citrus action and settlement and the payment of additional income taxes. Ryvamat Brief at 39. Neither of these harms was caused by any lack of diligence or delay by KEM's assignors. The Citrus action and settlement occurred in 2010, before any significant delay by KEM's assignors in filing suit. Moreover, the only act that Ryvamat took that resulted in this harm was the entry into the Lease as sole owner of the Kemmerer properties in July 2008 and there is no evidence that KEM's assignors knew of the Deer Park quiet title action at that time or that they had notice of anything that would have required them to assert their rights before Ryvamat entered into the Lease. The income taxes were

incurred based on events that occurred in 2008, Deer Park's sale of land to Ryvamat and the entry into the Lease. N.T. Trial at 132, 134, IRS Closing Agreement at 2. Because there had been no delay or lack of diligence by KEM's assignors at that time, any increased tax payments were also not a result of KEM's assignors' delay in bringing suit.

Ryvamat's third and fourth issues and KEM's challenge to the $1.6 million deduction for the Citrus settlement are appeals from the trial court's non-jury verdict after trial. On appeal from a non-jury trial verdict, this Court's review is limited to determining whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. *Slomowitz*, 268 A.3d at 1093.

These issues involve questions of whether and in what amounts Ryvamat is entitled to a credit against KEM's share of the Lease payment for monies that Ryvamat claims that it paid. A tenant-in-common who is forced to pay its co-tenant's share of a joint obligation can recover contribution from the co-tenant. *Bednar*, 688 A.2d at 1203; *In re Lohr's Estate*, 200 A. 135, 136 (Pa. Super. 1938). A tenant-in-common is also entitled to a credit for the other co-tenant's proportionate share of expenditures necessary to protect or preserve the jointly owned property. *Bednar*, 688 A.2d at 1205; *Quarello*, slip op. at 21-22.

In its third claim, Ryvamat argues that the trial court erred in not reducing the amount that it owes KEM for income taxes that Ryvamat's

principals paid.[1]  The trial court rejected the deduction for income taxes on the grounds that Ryvamat did not show that it paid any income taxes on the Lease payment or that the tax payments discharged any obligation of KEM. Trial Court Decision, 12/11/20, at 4-5.  These determinations are supported by the record.

The taxes that Ryvamat sought to deduct were the subject of an audit and a settlement with the Internal Revenue Service that addressed Ryvamat's and Deer Park's tax liability with respect to both the Lease payment and Deer Park's transfer of land to Ryvamat.  N.T. Trial at 117-23.  The evidence introduced by Ryvamat showed that under this settlement, the Lease payment was Deer Park's income and the taxes paid by Ryvamat's principals were taxes owed by them as Deer Park shareholders for a constructive dividend from Deer Park, not taxes paid by Ryvamat on the Lease payment.  *Id.* at 119-21, 131-32, 134; IRS Closing Agreement at 3-4 ¶¶4-5, 10.  Because Ryvamat failed to show that it paid income tax on KEM's share of the Lease payment, the trial court correctly concluded that there was no basis for allowing Ryvamat to deduct any income tax payments from KEM's share of the Lease payment.

Moreover, as the trial court also correctly concluded, income taxes paid on the Lease payment would not be deductible from KEM's share because there was no evidence that such payments discharged any obligation of KEM

---

[1] Because Ryvamat is a Subchapter S corporation, its income taxes are paid by its shareholders.  N.T. Trial at 39, 115.

and its assignors or preserved KEM's share of the Lease payment. Ryvamat does not contend that its principals' tax payments eliminated or lessened KEM's obligation to pay income taxes with respect to the Lease payment when the judgment in this case is paid to KEM. The income tax payments were a personal obligation of the taxpayers who received income, not taxes owed on the jointly owned property and there was no evidence or claim that Ryvamat's principals' income tax payments prevented loss or damage to the Kemmerer properties or loss of the Lease.

Ryvamat's fourth issue and KEM's primary cross-appeal issue both challenge the trial court's $1.6 million credit for the Citrus settlement. Ryvamat argues that the entire $3.2 million settlement should have been credited against its liability to KEM and KEM contends that none of the settlement can be credited against its share of the Lease payment. We conclude that neither party's position is meritorious and that the trial court did not err.

The trial court found that Ryvamat paid $3.2 million to settle the Citrus action to prevent the loss of the entire Lease payment and that the expedited settlement insured that the remaining $9,444,512 in proceeds from the Lease would not be lost. Trial Court Decision, 12/11/20, at 2-3. These findings are supported by the record. The Citrus action sought recission of the Lease as its primary relief in all of its counts. Citrus Complaint at 6-8, 10-14. The attorney who represented Ryvamat in the Citrus action testified that the

reason for paying the $3.2 million was to preserve as much of the Lease payment as possible and that he recommended that Ryvamat settle the Citrus action for that amount at that time to prevent the risk of losing the Lease payment and to reduce the attorney fee expenses in defending the Citrus action. N.T. Trial at 183, 195-98. The trial court found the attorney's testimony credible and persuasive. Trial Court Decision, 12/11/20, at 2. Because the Citrus settlement was entered into to preserve over $9 million of the Lease payment in which both Ryvamant and KEM's assignors had a 50% interest, the trial court properly credited one-half of that $3.2 million settlement against KEM's share. **Bednar**, 688 A.2d at 1205; **Quarello**, slip op. at 21.

Ryvamat contends that KEM should nonetheless bear the entire cost because its assignors' actions caused Citrus to file the Citrus action. The trial court properly rejected this argument. As the trial court found, the conduct of KEM's assignors that led to the Citrus action consisted of their assertion of their ownership rights concerning the Kemmerer properties and was therefore not a ground for penalizing KEM by charging it for more than its share of the settlement payment. Trial Court Decision, 12/11/20, at 2. Moreover, Ryvamat did not show that the $3.2 million settlement benefited KEM more than it benefited Ryvamat. While the possibility of reducing the Lease payment to provide a separate fund for KEM's assignors was raised in the settlement discussions, N.T. Trial at 174-75, 177, 195, the actual settlement

- 15 -

provided no fund for their benefit, Citrus Settlement Agreement, and there was no evidence that KEM or its assignors received any payment from Citrus.

KEM argues that none of the $3.2 million settlement should be charged to its share because the preservation of over $9 million under the Lease allegedly did not benefit it, because the Citrus settlement was a voluntary payment by Ryvamat and not payment of a joint obligation of Ryvamat and KEM or its assignors, and because the Citrus action and settlement included claims against defendants other than Ryvamat. Each of these arguments fails.

While the settlement did not preserve the Kemmerer properties themselves or the oil, gas, and mineral rights at issue and KEM's share was not set aside by Ryvamat, KEM was in fact benefited by the Citrus settlement. KEM's recovery from Ryvamat is based on the fact that Ryvamat received monies under the Lease and that it as a 50% co-tenant is entitled to 50% of those funds. If the Lease had been rescinded, there would be no such funds and KEM's 50% share would be $0. By preserving over $9 million of the Lease payment of which KEM is entitled to a 50% share, the Citrus settlement plainly benefited KEM, in addition to benefiting Ryvamat.

With respect to the second of these arguments, KEM is correct that a tenant-in-common cannot recover from the other co-tenant for voluntary payments of the other co-tenant's obligations or for payment of obligations that are not joint obligations of both parties. ***Bednar***, 688 A.2d at 1203; ***In re Lohr's Estate***, 200 A. at 136. That, however, is beside the point. The

trial court did not give Ryvamat credit for half of the Citrus settlement because it paid an obligation of KEM; it did so because the Citrus settlement preserved over $9 million of the Lease payment in which KEM had a 50% interest.

KEM's remaining argument is likewise without merit. While Citrus sought relief against two other defendants in its complaint, the trial court found that the sole reason for Ryvamat's $3.2 million settlement payment was to prevent the entire Lease payment from being lost, not to protect defendants from individual liabilities to Citrus for their conduct. Trial Court Decision, 12/11/20, at 2-3. The record supports this finding. The attorney who settled the Citrus action testified that the crux of the case was the deficiency in the title of the properties that were the subject of the Lease and that the claims asserting misrepresentations and nondisclosures under which defendants other than Ryvamat could be liable were "make weight" claims that were "thin at best, arguably frivolous." N.T. Trial at 186-89, 202. As discussed above, he also testified that the reason for the settlement was to preserve as much as of the Lease payment as possible. N.T. Trial at 183, 197. Moreover, the Citrus settlement was paid entirely by Ryvamat, the recipient of the Lease payment, not by any other defendant. Trial Court Decision, 12/11/20, at 3; N.T. Trial at 45, 219; Citrus Settlement Agreement ¶2. The trial court therefore did not err in reducing the amount of the Lease payment that Ryvamat owes KEM by one-half of the Citrus settlement.

Ryvamat's and KEM's remaining issues concern the trial court's award of prejudgment interest. Ryvamat argues that the trial court erred in awarding six percent interest and awarding prejudgment interest for the entire period from July 21, 2008. KEM argues that the trial court erred in not awarding interest on its $1.6 million share of the Citrus settlement for the period prior to the payment of that settlement.

Prejudgment interest may be awarded when a defendant holds money or property which belongs to the plaintiff. *Linde v. Linde*, 220 A.3d 1119, 1150 (Pa. Super. 2019); *Kaiser v. Old Republic Insurance Co.*, 741 A.2d 748, 755 (Pa. Super. 1999). While a plaintiff in a contract action for failure to pay a liquidated sum has right to prejudgment interest over which the court has no discretion, *TruServ Corp. v. Morgan's Tool & Supply Co., Inc.*, 39 A.3d 253, 264 (Pa. 2012), the decision whether to award prejudgment interest in a non-contract action for wrongfully withheld funds and the amount of such an award are matters of equity subject to the court's discretion. *Sack v. Feinman*, 413 A.2d 1059, 1065-66 (Pa. 1980); *Linde*, 220 A.3d at 1150; *Gurenlian v. Gurenlian*, 595 A.2d 145, 148 (Pa. Super. 1991). We review challenges to a court's award of prejudgment interest for abuse of discretion. *Linde*, 220 A.3d at 1150.

The trial court held that KEM was entitled to prejudgment interest from July 21, 2008 because Ryvamat received the Lease payment on that date and kept all of the funds for itself despite having notice by August 2008 of a claim

of 50% ownership of the rights for which the Lease payment was made. Trial Court Decision, 12/11/20, at 6. The trial court concluded that KEM as a co-tenant was automatically entitled to prejudgment interest for this entire period under **Sheridan**, regardless of whether Ryvamat had beneficial use of all of the Lease payment for the entire period and without considering any other factors or evidence. Trial Court Decision, 12/11/20, at 6-7. The trial court concluded that the statutory rate of six percent was the appropriate rate of interest because it could not be determined what rate KEM and its assignors would have earned on the funds. **Id.**

We conclude that the trial court did not abuse its discretion in awarding prejudgment interest at the rate of six percent for the period after this action was commenced on July 18, 2014. In determining the rate of interest, the trial court recognized its discretion to set a rate based on considerations of justice and fairness and fully considered the evidence before it concerning lower and higher rates of return that could have been earned. Trial Court Decision, 12/11/20, at 6-7. Where the court has properly understood its authority and considered the evidence and there is no showing that a different rate of interest is necessary to compensate the plaintiff or prevent the defendant from retaining profit from its wrongful conduct, award of prejudgment interest at the statutory rate of six percent is not an abuse of discretion. **Gurenlian**, 595 A.2d at 149. The only other argument that Ryvamat asserts with respect the award of prejudgment interest from July

2014 is the claim that no prejudgment interest should have been awarded for the period before KEM's assignors settled their dispute in 2015 because until that date, the identity of the co-owner of the oil and gas rights was uncertain. That argument is without merit. Where the defendant knows that it has an obligation to pay some party and choses to simply retain the funds for itself, it is not inequitable to require it to pay interest on those funds for the period after suit has been filed against it. *See Schiller v. Royal Maccabees Life Insurance Co.*, 759 A.2d 942, 945 (Pa. Super. 2000).

The situation with respect to the period prior to July 2014, however, is different. Nearly six years passed between Rymavat's receipt of the Lease payment before any action was brought to recover KEM's share. Although KEM's assignors were aware of the Lease payment for almost all of that period, Trial Court Order and Opinion, 10/24/19, at 16, the evidence at trial was undisputed that KEM's assignors made no demand for payment to Ryvamat before suit was filed in July 2014. N.T. Trial at 171, 261; Dildine Dep. at 121. Moreover, KEM's assignors' petitions to strike the quiet title judgment were pending for approximately six years before that judgment was stricken in September 2014. Evidence was introduced at trial that KEM's assignors disputed each others' standing in the quiet title action and sought to litigate and resolve their disputes with each other before resolving the petitions to strike or asserting any claim against Ryvamat. N.T. Trial at 165-71.

The trial court made no findings concerning whether or how much of this lengthy period of delay was caused by KEM's assignors, whether it was equitable to award interest for periods of delay that were KEM's responsibility, or whether interest for such a period should be limited to the amount of interest or investment income earned by Ryvamat on KEM's share during that period. Instead, it concluded, without evaluating this evidence, that it was automatically equitable to award KEM prejudgment simply because KEM "as a cotenant, is entitled to prejudgment interest, irrespective of whether or not the defendant had beneficial use of those funds." Trial Court Decision, 12/11/20, at 7.

That ruling was error. The sole authority cited by the trial court, **Sheridan**, does not compel a court to ignore evidence of the cause of delay. The Court's language in **Sheridan** was a statement in passing that the court on remand should award interest "from the dates when payment should have been made," without mention of the appropriate interest rate and without any indication that equitable grounds had been shown for limiting the plaintiffs' recovery of prejudgment interest. 42 A.2d at 621. Moreover, later decisions have made it clear that the award of interest in these cases is to be governed by equitable considerations. **Sack**, 413 A.2d at 1065-66; **Murray Hill Estates, Inc. v. Bastin**, 276 A.2d 542, 545 (Pa. 1971); **Linde**, 220 A.3d at 1150; **Gurenlian**, 595 A.2d 148. Because the trial court failed to consider and make findings concerning whether and what length of the delay before

July 2014 was caused by KEM's assignors and whether it is equitable to award KEM interest for periods of its own delay and at what rate, we must vacate the award of interest for the period from July 21, 2008 and July 18, 2014 and remand for the trial court to make those determinations.

Although KEM's prejudgment interest issue relates to this period, there is no need for the trial court to consider that issue on remand as it is without merit. Prejudgment interest is awarded on the amount that the defendant owes the plaintiff after all deductions to which the defendant is entitled. *Cresci Construction Services, Inc. v. Martin*, 64 A.3d 254, 261 n.10 (Pa. Super. 2013); *Burkholder v. Cherry*, 607 A.2d 745, 748 (Pa. Super. 1992). Because KEM's $1.6 million share of the Citrus settlement is not money that Ryvamat owes KEM, the trial court properly awarded interest only on the amount of $4,513,484.

For the foregoing reasons, we affirm the trial court's $4,513,484 judgment in favor of KEM and against Ryvamat and its award of prejudgment interest on that amount from July 18, 2014 until the entry of the judgment. We, however, vacate the trial court's award of prejudgment interest for the period from July 21, 2008 to July 18, 2014 and remand this case to the trial court to make further findings concerning whether and what length of the delay in that period was caused by KEM's assignors and to determine whether and at what rate it is equitable to award KEM interest for such periods.

Judgment affirmed in part and vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2022