**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BOREL BUILDERS, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN AND PAMELA BURKE | : | |
| | : | |
| BRIAN AND PAMELA BURKE | : | No. 1445 MDA 2021 |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BOREL BUILDERS, INC. AND | : | |
| STEPHEN BOREL | : | |
| | : | |
| Appellant | | |

Appeal from the Judgment Entered on March 2, 2022
In the Court of Common Pleas of Susquehanna County Civil Division at
No(s):  2017-00083 CP,
2017-01244 CP


BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED JANUARY 24, 2023**

Borel Builders, Inc. and its owner, Stephen Borel, (collectively, "Borel") appeal from the judgment entered on two related actions stemming from the construction of the residential home of Brian and Pamela Burke. Borel argues the court erred in *sua sponte* concluding that Borel had waived a statute of limitations defense, finding that the defense lacked specificity, holding that

_____

[*] Former Justice specially assigned to the Superior Court.

Borel could not pursue a claim for *quantum meruit*/unjust enrichment, and denying Borel's claim for prejudgment interest. We affirm.

In May 2012, the Burkes contracted with Borel to construct a home for $402,880. The contract allowed the Burkes to retain any money sufficient to cover any non-conforming or incomplete work, and to hire a third-party to complete or remedy the defective work after a 30-day period. Ex. B-1, Agreement, at 3, Sec. 6. The contract stated that final payment would be due when the Burkes began to occupy the home, except for any amount that they had escrowed for incomplete or non-conforming work. ***Id.*** at 2, Sec. 3 and 3, Sec. 6. The contract provided that payments due and unreasonably held would incur interest of 5% per day after 10 days, unless the payment had been withheld due to incomplete or non-conforming work. ***Id.*** at 3, Sec. 7.3. It also included a provision allowing the Burkes to submit a list of complaints and defects to Borel within one year of the date of occupancy and requiring Borel to make any reasonable and necessary repairs, adjustments, or replacements within 60 days of receipt of the list and for no additional cost. ***Id.*** at 2, Sec. 6.

The contract contained an integration clause stating that it "supersedes prior negotiations, representations or agreements, either written or oral." ***Id.*** at 1 Sec. 1. It stated that "Modifications issued after execution of this agreement shall be by work order requisitions with amounts of debit or credit to be initialed by the contractor and owner." ***Id.*** The contract further specified that "Change orders will be executed upon receipt of request form signed by

Contractor and at least one of the owners. Payment terms for each change order will be mutually agreed upon and specified on each request." *Id.* at 3 Sec. 7.10. The contract also stated that any modifications exceeding the contract price "are to be paid out of owner funds." *Id.* at 1 Sec. 1.

The "Proposal" section of the contract outlined the various materials to be used and the total cost allowance for some areas (such as floor coverings). It stated, "Customers are responsible for any costs that exceed allowances." Ex. B-2, Proposal, at 4.

The Burkes moved into the home in February or early March 2013 and paid the contract price in full. *See* Trial Court Opinion, 10/8/21, at 5.[1] In January, February, April, and July 2013, and in February and March 2014, the Burkes sent "punch lists" to Borel, requesting it make certain repairs or alterations. *See id.* In February 2014, after performing some of the requested work, Borel submitted an invoice for $42,968.25 ("the invoice"), which the Burkes refused to pay.

Borel initiated suit against the Burkes in January 2017 by filing a praecipe for a writ of summons. Borel thereafter filed a complaint alleging, "During the course of the construction[,] the Burkes requested that changes be made to the contract including, but not limited to, changes in materials and fixtures allotted in the [c]ontract." Borel Complaint at ¶ 5. The complaint

---

[1] We will refer to the opinion issued by the court when it decided the matter as the "Trial Court Opinion" and the opinion issued by the court pursuant to Rule 1925(a) as the "Pa.R.A.P. 1925(a) Opinion."

stated that Borel "issued an invoice for the costs of the change orders" that the Burkes refused to pay, making the Burkes "in breach of their obligations." *Id.* at ¶ 9-10, 14. Borel requested the full invoice amount plus statutory interest. The complaint alleged that none of the items on the invoice had been included in the punch lists. *Id.* at ¶ 12. Borel attached copies of the contract and invoice to the complaint.

Rather than file a counterclaim, the Burkes filed a separate suit against Borel in November 2017, by filing a praecipe for a writ of summons. The subsequent complaint set forth claims for breach of contract and breach of warranty based on defective workmanship and Borel's failure to remedy the items in the punch lists. The complaint also alleged the items in Borel's invoice "were never agreed upon." Burkes' Complaint at ¶ 17. The Burkes sought damages exceeding $50,000.

Borel answered and raised new matter. In relevant part, Borel asserted the Burkes' "claims are barred by the applicable statute of limitations." Borel's New Matter, 5/10/19, at ¶ 29. The Burkes answered that no response was required to this legal conclusion. Burkes' Answer to Borel's New Matter, 9/30/19, at ¶ 29.

The trial court consolidated the two cases. It held a non-jury trial on March 29 and June 28, 2021.

Relevant to this appeal, Counsel for Borel made the following argument to the court regarding its statute of limitations defense:

Next, we did make a number of affirmative defenses or make — provide a number of affirmative defenses in our new matter. One of those affirmative defenses was the statute of limitations in this matter which is four years on a contract claim. The suit, the Burkes' suit was filed on November 17, 2017. The Burkes testified and the exhibits show and as my client testified, that the Burkes were in their house as of February 7, 2013, more than four years passed between the time that they should have known of any deficiencies when they brought suit. Indeed, all of the Burkes' claims appear to be backed up by the testimony of Mr. Sincavage[2] who claims that he was aware of the claimed deficiencies at the time the work was performed, all of which was before the Burkes' moved into the house. So, all of Mr. Sincavage's knowledge came about before February 7, 2013. Therefore, the Burkes are presumed to be aware of that and I believe Mr. Sincavage testified that he made them aware of the deficiencies before they moved in. Mr. Sincavage also testified that he continually made the Burkes aware of those deficiencies at the time that he became aware of them. As such, because the Burkes were aware of the claimed deficiencies, before they moved in the date of February 7, 2013, the Burkes had ample time to initiate suit prior to the running of the statute of limitations. By reason that statute of limitations ran prior to the filing of the suit, we ask this court to dismiss the Burkes' claims, remaining claims as a matter of law.

N.T., 6/28/21, at 86-87 (some apostrophes removed or moved). Counsel for the Burkes responded that the statute of limitations had been tolled because the breach was not "fully perfected" until the parties had abandoned their attempts to resolve the dispute. *Id.* at 87-88.

The court entered a decision on October 12, 2021.[3] On the Burkes' breach of contract claim, it awarded $20,892.57 in compensatory damages

---

[2] Paul Sincavage testified for the Burkes as an expert in the field of residential construction.

[3] The court issued the order and opinion on October 8, 2021, but provided Pa.R.C.P. 236 notice on October 12, 2021.

based on Borel's failure to rectify defective workmanship that had been specified by the contract.[4] It dismissed the Burkes' breach of warranty claim as redundant to the breach of contract action.

The court found Borel's statute of limitations defense would have been meritorious as to any defects the Burkes identified prior to November 17, 2013 (four years before they filed the writ of summons), but that the defense was waived for lack of specificity in the pleading. Trial Ct. Op. at 24 (citing **El-Gharbaoui v. Ajayi**, 260 A.3d 944 (Pa.Super. 2021)). In its Rule 1925(a) opinion, the trial court explained that, although the Burkes had not raised a waiver argument, "review of the adequacy of Borel Builders' pleading was necessary to ascertain whether the statute of limitation defense applied." Pa.R.A.P. 1925(a) Opinion, 12/10/21, at 3.

The court also awarded Borel $27,458.99[5] for its "breach of contract claim as to failure to pay for overages/non-contractual work," because the contract specified the Burkes would be "responsible for any costs that exceed allowances." Trial Court Order, 10/8/21, at ¶ 8; Trial Ct. Op. at 28. The court

---

[4] This figure is comprised of $1,810.00 for improper framing lumber, $7,944.75 for improper installation of the basement concrete floor, $3,010.00 for improper installation of the electrical system, $5,127.82 for improper installation of the soffits, $500.00 for flawed tinting of the shower door, and $2,500.00 for improper installation of the bathtub.

[5] This figure includes $2,385 for additional insulation, $3,725.55 for plumbing, $2,043.44 for flooring, $8,792.00 for a fireplace, and $12,150.00 for a granite countertop, offset by credits that Borel owed to the Burkes for trim ($1,220.00) and electrical ($415.00). **See** Trial Ct. Op. at 28. While these amounts total $27,460.99, and not $27,458.99, neither party has raised a trial court error based on the two-dollar difference.

denied Borel's request for prejudgment interest on the compensation for these items on the basis that the contract allowed the Burkes to withhold payment for non-conforming work and did not state that interest would accrue. Trial Ct. Op. at 30 n.10. It found "non-conforming work existed and . . . the parties had a *bona fide* dispute over the conformity of the work." *Id.*

In its Rule 1925(a) opinion, the court explained that prejudgment interest is only appropriate when payment due under a contract was wrongfully withheld, but here, it found the contract permitted the Burkes to withhold payment on contested overages and/or extra work. Pa.R.A.P. 1925 Op. at 9-10, 14, 16 n.14. The court observed that this contract provision did not state that interest would accrue, in contrast to the clause providing for interest for overdue payments. *Id.* at 13. The court found that the Burkes had refused to pay the invoice only after Borel had failed to correct the non-conforming work and the Burkes had resorted to paying other contractors to correct the defects. *Id.* at 14. The court therefore concluded the Burkes had not "wrongfully" withheld the payment for overage amounts.

The court also observed that prejudgment interest must be ascertainable from the contract, and here, the Burkes had paid the full contract price in a timely manner and the additional amount in dispute was not ascertainable from the terms of the contract and not until the court had decided the matter. *Id.* at 10-12 and n.10 (citing Section 354 of the Restatement (Second) of Contracts and contrasting the facts of the instant

case with those of **Burkholder v. Cherry**, 607 A.2d 745 (Pa.Super. 1992)). The court noted,

> To hold otherwise would put the [homeowners] in a situation where, in order to avoid the imposition of prejudgment interest, they would need to tender payment for any amounts-no matter how questionable or unreasonable – that a contractor alleges are due and owing, even if those amounts are outside the agreed amount stated in the written contract.

*Id.* at 12 n.10.

The court found the Burkes were not liable to reimburse Borel for the other items included in the invoice.[6] The court observed that Borel's "complaint is based solely upon an alleged breach of the written contractual agreement between the parties, which specifically required that any modifications were to be written and approved by both parties." Trial Ct. Op. at 30; **see also** Pa.R.A.P. 1925(a) Op. at 5-6, 6 n.5 (observing that a copy of the contract was attached to the complaint, and the complaint alleged that the Burkes were "in breach" for failing to pay for change orders and did not allege any non-contractual work or advance any *quantum meruit*/unjust enrichment claims). The court noted Borel did not "file[] a claim for *quantum meruit* or unjust enrichment relative to the work and/or materials provided outside of the parties' contractual agreement." Trial Ct. Op. at 29 n.7.

---

[6] This included trim work, a booster pump, base partition work, well hookup, porch screen materials upgrade, and the lower oak staircase. The invoice had requested $12,830 for these materials and work. **See** Trial Ct. Op. at 29-30; Pa.R.A.P. 1925(a) Op. at 9 n.8.

The court found that as breach of contract claims, Borel's claims for these items failed because the contract had not been amended in writing with change orders specifying the cost of the disputed items. ***Id.*** at 29-30 & n.8, n.9. The court also found that the Burkes were not liable for the cost of these items because, without amendment, the contract had not stated that these items would incur overage costs.[7] Trial Ct. Op. at 28.

In its Rule 1925(a) opinion, the court explained that it found the contract was too broad regarding the disputed items to determine that they were not covered or included in the contract price. Pa.R.A.P. 1925(a) Op. at 7-8. It also explained that it found Borel's *quantum meruit*/unjust enrichment claims failed on the merits because Borel "failed to provide sufficient evidence to demonstrate that the Burkes were not only aware of the additional work but likewise understood that the work itself was outside the scope of the work required under the parties' written contract, understood the cost of the additional work, and agreed to have it performed." ***Id.*** at 5 n.4. It found Pamela Burkes' testimony that the Burkes believed the disputed items were included in the contract price to be credible. ***Id.*** at 5 n.4, 8-9. The court stated:

---

[7] Regarding the trim installation, the court found that the proposal identified that trim work would be included but did not list any cost allowance other than "To Be Assessed," and did not state that the Burkes would be responsible for the cost to install the trim. Trial Ct. Op. at 28-29. The Burkes purchased the trim from an outside vendor, and the court concluded the cost to install the trim was contemplated in the contract price. ***Id.*** In contrast, the court stated that it found the other items were not included in the contract. ***Id.*** at 29-30.

> This is not a situation where the Burkes paid nothing to Borel Builders; rather, this is situation where the Burkes paid the full contractual amount, while they were still in the process of attempting to get problems resolved by Borel Builders, only to be provided with an additional bill after full payment contending that they owed an additional $42,000. Given the equitable nature of a *quantum meruit* claim, even assuming that Borel Builders had conferred some benefit to the Burkes that was outside the parties' written contractual agreement, the court finds that it would not be unjust or unconscionable to allow them to retain that benefit without further payment.

*Id.* at 8. The court found it was "especially true" that equity fell in favor of the Burkes considering that Borel had used a lesser grade of lumber for framing the home than had been required by the contract, for which Borel spent "substantially less money." *Id.* at 9 n.7, 14 n.12. The court also found that Borel had failed to prove that the disputed items conferred a benefit on the Burkes exceeding the contract price. *Id.* at 9 n.8.

Borel filed a Motion for Reconsideration, which the court denied.[8] Borel appealed.[9, 10]

---

[8] The court scheduled a hearing on the Motion, but then denied the Motion after receiving a letter from Borel stating the court must act on the Motion within the appeal period. *See* Order, 11/5/21.

[9] Borel erroneously filed a notice of appeal from the decision entered on October 12, 2021, before judgment was entered. We will deem the notice of appeal filed on the date of the entry of judgment. *See* Pa.R.A.P. 905(a)(5); *McEwing v. Lititz Mut. Ins. Co.*, 77 A.3d 639, 645 and n.4 (Pa.Super. 2013). We have amended the caption to reflect that the appeal lies from the entry of judgment on March 2, 2022.

[10] Although Borel only filed one notice of appeal referencing two trial court docket numbers, we need not quash pursuant to Pa.R.A.P. 341(a), as the trial court had consolidated the two civil matters and Borel filed the notice of appeal
*(Footnote Continued Next Page)*

Borel raises the following issues:

1. Did the lower court abuse its authority when it *sua sponte* raised a waiver issue to Borel's claim that the four-year statute of limitations applied to all of the Burkes' claims?

2. Did the lower court err when it determined that Borel's statute of limitations defense contained in its new matter lacked specificity and, therefore, was waived as a matter of law?

3. Did the lower court err when it held that Borel was not permitted to seek damages against the Burkes for both an express contract and unjust enrichment under a single cause of action in the Borel Complaint?

4. Did the lower court err when it held that Borel was not entitled to statutory interest based upon the Burkes' entitlement to withhold funds for non-conforming work?

Borel's Br. at 4 (suggested answers omitted).

### I. The Statute of Limitations

Borel's first two issues relate to its statute of limitations defense. First, Borel argues that the court abused its discretion and committed an error of law by raising *sua sponte* that Borel had waived the defense by failing to plead it with specificity. According to Borel, the Burkes did not raise this waiver argument prior to, during, or after trial; rather, the court raised it for the first time in its decision. Borel argues that because the Burkes did not raise the issue in a preliminary objection, the Burkes waived it, and it was not properly before the trial court. Borel posits that aside from jurisdictional defects, courts should not raise arguments for the parties.

---

at the lead docket number. ***See Always Busy Consulting, LLC v. Babford & Co., Inc.***, 247 A.3d 1033, 1043 (Pa. 2021).

Second, Borel argues that the court erred in determining the defense failed for lack of specificity. Borel asserts that it "developed the factual underpinnings of the defense at trial and argued the specific facts and law at trial." Borel's Br. at 22. Borel provides citations to record evidence that it claims proves the Burkes discovered each of the construction deficiencies for which the trial court awarded them damages,[11] over four years before they commenced their breach of contract action in November 2017. *Id.* at 26. Borel quotes the portion of trial transcript where it argued to the court that the defense should apply. Borel points out that the court acknowledged in its opinion that some of the Burkes' claims would have been barred by a statute of limitations defense, "if properly pled." *Id.* at 25 (quoting Trial Ct. Op. at 24).

Whether a statute of limitations precludes an action is a matter of law, unless it requires a factual determination. *Kessock v. Conestoga Title Ins. Co.*, 194 A.3d 1046, 1056 (Pa.Super. 2018). Our standard of review of matters of law is *de novo*, and our scope of review is plenary. *Id.*

A breach of contract claim must be brought within four years of the breach. 42 Pa.C.S.A. § 5525(a)(1). If the action is based on a latent defect in construction, the statute starts to run when the injured party becomes aware of the defect or should have become aware through the exercise of due

_____

[11] This includes improper framing lumber, improper installation of the basement concrete floor, improper installation of the electrical system, improper installation of the soffits, flawed tinting of the shower door, and improper installation of the bathtub. *See* note 4, *supra.*

- 12 -

diligence. ***A. J. Aberman, Inc. v. Funk Bldg. Corp.***, 420 A.2d 594, 599 (Pa.Super. 1980). However, attempts to repair construction defects will toll the statute of limitations where the defendant represents the repairs will cure the defects and the plaintiff relies on the representations. ***Keller v. Volkswagen of Am., Inc.***, 733 A.2d 642, 646 (Pa.Super. 1999); ***Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc., L.P.***, 842 A.2d 334, 344 n.8 (Pa. 2004).[12]

In ***El-Gharbaoui***, this Court affirmed the trial court's denial of the statute of limitations defense following post-verdict motions because the appellant had only made a threadbare reference to the defense in his New Matter. Appellant had not pleaded "the factual underpinnings" upon which the defense rested. 260 A.3d at 963. We found waiver and affirmed on that basis, even though the trial court had denied the defense after it erroneously concluded that the defendant had raised it for the first time following trial. ***Id.*** at 962;[13] ***see also JRW Serv. Grp., LLC v. New Age Dev. Grp., LLC***, No. 2309 EDA 2020, 2021 WL 1828481 at *2 (Pa.Super. 2021) (unpublished memorandum) (affirming court's denial of claim following post-verdict motion on basis that defendant had waived claim by pleading it as a cursory legal

---

[12] Likewise, the date the statute of limitations for breach of warranty actions begins to run depends on whether the warranty explicitly extended to future performance. ***See Cucchi v. Rollins Protective Servs. Co.***, 574 A.2d 565, 572-73 (Pa. 1990).

[13] We may affirm a trial court's decision on any basis that is supported by the record. ***See In re A.J.R.-H.***, 188 A.3d 1157, 1175-76 (Pa. 2018).

conclusion without any factual support, although trial court had denied claim on different basis).

Pursuant to **El-Gharbaoui**, we find waiver. Borel's pleading regarding the defense stated only a cursory legal conclusion: that the "claims are barred by the applicable statute of limitations." Borel New Matter, 5/10/19, at ¶ 29. Borel did not plead sufficient facts to substantiate the statute of limitations defense.

Although the trial court raised the issue of waiver *sua sponte*, we discern no error. Borel's failure to plead or substantiate the defense with specificity frustrated the trial court's ability to decide the merits of the claim. We therefore affirm its finding of waiver. **Cf. Kreiss v. Main Line Health, Inc.**, No. 1396 EDA 2018, 2019 WL 2305747, at *8 (Pa.Super. 2019) (unpublished memorandum) (rejecting appellant's argument that appellee had waived statute of limitations defense by failing to plead relevant facts; appellant never raised waiver in preliminary objects, the defense was argued before the trial court, and the court had been able to determine the defense had merit).

## II. Borel's Unjust Enrichment Claims

Borel next argues that the court erred in dismissing some of its claims[14] on the basis that it had failed to plead *quantum meruit*/unjust enrichment. Borel asserts that the invoice attached to its complaint plainly showed what

---

[14] The court denied Borel's request to be reimbursed for trim work, a booster pump, base partition work, well hookup, porch screen materials upgrade, and the lower oak staircase. **See** note 6, *supra*.

- 14 -

work was done that was not included in the contract. Borel further argues that although it "did not divide its contract theories of recovery into separate causes of action to discern the different contractual relationships involved," this "does not limit Borel from obtaining judgment against the Burkes under every type of contractual relationship." Borel's Br. at 29. Borel contends that pleadings for breach of contract may be amended to included *quantum meruit*, where the facts at issue are consistent. Borel further argues that its counsel argued at trial that Borel was seeking damages under theories of express, implied, and constructive contracts. Borel asserts it also proved at trial that it performed the relevant work at the request of the Burkes, and that these items were not contemplated in the contract.

We need not determine whether the court erred in concluding Borel had waived his claims *quantum meruit*/unjust enrichment by failing to plead them in the complaint, because we affirm the court's findings that these claims fail on their merits.[15]

"*Quantum meruit* is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services." ***Durst v. Milroy Gen. Contracting, Inc.***, 52 A.3d 357, 360 (Pa.Super. 2012) (quoting

_____

[15] We accept the findings of fact of a court sitting in equity, where supported by competent evidence, but review the court's legal conclusions for an abuse of discretion or error of law. ***Wilson v. Parker***, 227 A.3d 343, 352 (Pa.Super. 2020).

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 532 fn. 8 (Pa. 2010)).

> Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred. The elements necessary to prove unjust enrichment are:
>
> > (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Id.* (quoting *Mitchell v. Moore*, 729 A.2d 1200, 1203-04 (Pa.Super. 1999) (citations omitted). Because the critical question is whether the benefit is "unjust," "[t]he doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1264 (Pa.Super. 2017) (citation omitted).

The court, sitting in equity, considered that the parties' relationship was governed by a written contract that required written, signed change orders, and that Borel had not presented any such orders to the Burkes after they discussed the disputed items to obtain their consent for any additional costs. The court found Pamela Burkes' testimony credible and concluded that the Burkes had believed the disputed items were included in the contract price; the court itself could not determine that the items were not included in the

contract price. The court also found that allowing the Burkes to retain the alleged $12,830 in benefits would not be unjust, as Borel did not prove that these items did not make the cost of the project exceed the contract price, and because Borel had already saved a considerable sum during construction by using a lower-grade lumber than had been required by the contract.

These conclusions are supported by the record, and the court did not err or abuse its discretion in determining that Borel was not entitled to reimbursement for these items on a theory of *quantum meruit*/unjust enrichment.

### III. Statutory Interest

Borel argues that the court abused its discretion and erred when it denied Borel's claim for statutory interest. Borel argues that there was no evidence and no finding that the items for which the court awarded it contract damages[16] were due to incomplete or non-conforming work; therefore, the Burkes did not have the right under the contract to withhold payment for this work. Borel also argues that although the Burkes could withhold payment for incomplete work, the contract provided they were to escrow those funds, which the Burkes did not do. Borel additionally argues that the Burkes waived this argument, as it did not raise as a defense that statutory interest was not

---

[16] This includes $2,385 for additional insulation, $3,725.55 for plumbing, $2,043.44 for flooring, $8,792.00 for a fireplace, and $12,150.00 for a granite countertop. **See** note 5, *supra.*

permitted under the contract because of the provision allowing them to withhold funds for deficient work.

Borel further argues that the amounts due were ascertainable, as they were itemized in the invoice. Borel asserts that the law provides that prejudgment interest must be awarded regardless of the Burkes' good faith in contesting the payment. Borel also alleges that the Burkes did not withhold the payment out of good faith, as Pamela Burke testified that she did not even review a copy of the invoice until trial.

We review an award of prejudgment interest for an abuse of discretion. *Cresci Constr. Servs., Inc. v. Martin*, 64 A.3d 254, 258 (Pa.Super. 2013). We affirm the trial court's denial of prejudgment interest in this case on the basis that the damages are not ascertainable from the contract.

Prejudgment interest "must be awarded notwithstanding the good faith of the party contesting the claim." *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 590 (Pa.Super. 2003). Interest is due even where the award is based on *quantum meruit*, where "the claim is for work done and services rendered." *Burkholder*, 607 A.2d at 748. "The basic premise underlying the award of prejudgment interest to a party centers upon the fact that the breaching party has deprived the injured party of using interest accrued on money which was rightfully due and owing to the injured party." *Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs., Inc.*, 685 A.2d 141, 148 (Pa.Super. 1996).

However, "[t]he disputed amount must be either specified in the contract or ascertained from the terms of the contract such that at the time of the breach, the breaching party can proffer a tender." ***Cresci Const. Servs., Inc.***, 64 A.3d at 265. "Where the amount due and owing is not sufficiently definite, prejudgment interest is awardable at the discretion of the trial court." ***Ely v. Susquehanna Aquacultures, Inc.***, 130 A.3d 6, 15 (Pa.Super. 2015) (citing ***Cresci Constr. Servs., Inc.***, 64 A.3d at 260).

Here, the contract required the Burkes to pay a definite sum—$402,880. The Burkes paid that amount. Without any other written changes, Borel subsequently sent the Burkes an invoice for an additional $42,968.25. The trial court determined that the Burkes did in fact owe Borel a portion of this amount ($27,458.99), because the Burkes had requested Borel upgrade some of the areas/items definitively included in the contract in excess of the stated "allowance" for that area. However, the court found that the monetary amounts for these items were not defined by the terms of the contract, and we agree. Neither the contract nor any modification to the contract specified that the Burkes would be responsible for $2,385 for additional insulation, $3,725.55 for plumbing, $2,043.44 for flooring, $8,792.00 for a fireplace, or $12,150.00 for a granite countertop. As these amounts were not ascertainable from the contract, the court did not abuse its discretion in denying Borel's claim for prejudgment interest.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>01/24/2023</u>